UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CRUM & FORSTER INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROBB REPORT MEDIA LLC, et al.,<br><br>Defendants. | Case No. 20-cv-00127-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CRUM'S SUMMARY-JUDGMENT MOTION**<br><br>Re: ECF No. 68 |

## INTRODUCTION

Plaintiff Crum & Forster underwrote an insurance policy for Ferrari for a 2018 Ferrari 812 Superfast. The defendants are (1) Robb Report Media, which borrowed the car for use at an auto event in Napa, (2) Anatoly Borokhovich, who drove the car at the event and crashed and totaled it, and (3) his brother Emil Borokhovich, who was a passenger. Crum paid Ferrari $292,508.35 for the damage and then sued the defendants to recover the funds under two contracts: a loan agreement between Ferrari and Robb Report, which required Robb Report to return the car in the same condition and pay for any damage, and the Borokhoviches' waivers, which incorporated the loan agreement. The court previously granted Crum summary judgment on the ground that the defendants breached their contracts by not returning the car in the same condition or paying for the damages and ordered supplemental briefing on Crum's entitlement to damages under the doctrine of equitable subrogation. Because Ferrari transferred its claims to Crum, Crum is entitled to its

ORDER – No. 20-cv-00127-LB

damages from Robb Report and Anatoly Borokhovich (but not from Emil Borokhovich). (On this last point, the court revisits the analysis in the earlier summary-judgment order.[1])

At the end of the order, the court sets out a process for illuminating any Rule 56(d) issues.

## ANALYSIS

An insurer who has paid an insured's loss may recover the amount from the third parties who are responsible for the loss. *Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 272 (2005). Put another way, after paying its insured, the insurer steps into the shoes of the insured and can recover the payment for the insured loss. *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1106 (2006); *21st Century Ins. Co. v. Super. Ct.*, 47 Cal. 4th 511, 518 n.3 (2009). The elements of equitable subrogation are as follows:

> (a) the insured suffered a loss for which the defendant is liable. . . ; (b) the claimed loss was one for which the insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998).

Crum is entitled to subrogation against Robb Report and Anatoly Borokhovich: it paid Ferrari for its $292,508.35 loss under the insurance policy, and Ferrari assigned its claims to Crum.[2] (As discussed below, the court denies Crum summary judgment against Emil Borokhovich.)

The defendants nonetheless contend that Crum is not entitled to subrogation because it did not

---

[1] This order incorporates the earlier order by this reference. Order — ECF No. 77. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636 and do not dispute the court's diversity jurisdiction. The court held a hearing on August 19, 2021.

[2] Insurance Policy, Ex. A to Perkins Supp. Decl. – ECF No. 73-1 at 45, 51–52; Proof of Loss, Ex C. to *id.* – ECF No. 73-1 at 162–63.

ORDER – No. 20-cv-00127-LB                     2

plead a claim for subrogation.[3] Crum pleaded its theory of recovery adequately. It alleged in the first sentence that it sued "a/s/o" (as subrogee of) Ferrari. It described and attached the insurance policy, the parties' contracts, the accident, and its payment to Ferrari for the covered loss.[4] The parties referred to this case as a subrogation action in their joint case-management statements.[5] A motion to dismiss the Second Amended Complaint challenged Crum's entitlement to pursue its subrogation rights.[6] This undisputedly is a subrogation action.

Robb Report also contends that Crum has not established that it did not pay Ferrari as a volunteer.[7] The policy establishes Crum's obligation to pay Ferrari, and Crum submitted uncontested evidence that it paid Ferrari under the policy (and not as a volunteer).[8]

Robb Report and Emil Borokhovich (the passenger) also contend that Crum is not in a superior equitable position to them because they did not cause the damage: Anatoly Borokhovich did.[9] Because Robb Report's and Anatoly Borokhovich's breach of their contracts caused Crum's damage, Crum's equitable position in recovering the money it paid Ferrari is superior to their positions. Even assuming that Emil Borokhovich breached his contract, Crum's equitable position is not superior to his position.

The doctrine of superior equities prevents an insurer from recovering on a subrogation claim against a party with equities that are equal or superior to the insurer's equities. *State Farm*, 143 Cal. App. 4th at 1108. The insurer's right of subrogation against a third party thus depends on the insurer's showing that the third party "is guilty of some wrongful conduct which makes his equity

---

[3] Robb Report Sur-Reply – ECF No. 78 at 1–3; Borokhovich Sur-Reply – ECF No. 79 at 3–4.

[4] Third Am. Compl. – ECF No. 48 at 1, 3–5, 6–8 (¶¶ 12–18, 22–24, 32–40, 50–64); Insurance Policy, Ex. A to *id.* – ECF No. 48-1 at 92; Proof of Loss, Ex. G to *id.* – ECF No. 48-7 at 2.

[5] Joint Case-Management Statements – ECF Nos. 49 at 2, 56 at 3, & 59 at 3.

[6] Mot. to Dismiss – ECF No. 42-1 at 2, 6–8; Reply – ECF No. 44 at 4–5.

[7] Robb Report Sur-Reply – ECF No. 78 at 5–6.

[8] Perkins Supp. Decl. – ECF No. 73-1 at 1–2 (¶¶ 1–7); Insurance Policy, Ex. A to *id.* – ECF No. 73-1 at 45, 51–52; Proof of Loss, Ex C. to *id.* – ECF No. 73-1 at 162–63.

[9] Robb Report Sur-Reply – ECF No. 78 at 4–5; Borokhovich Sur-Reply – ECF No. 79 at 6 (also conceding that if the "[p]laintiff had plead an equitable subrogation claim properly . . . it might have a viable claim as against Anatoly.").

inferior to that of the [insurer]." *Id.* at 1112. An insurer always has superior equities against a wrongdoer directly responsible for the insured loss, which here is Anatoly Borokhovich. *Id.* at 1113. The issue is whether Crum can recover from Robb Report and Emil Borokhovich, who signed contracts that permitted their use of the car and thus (at least for Robb Report) contributed to and permitted the loss. The inquiry turns on fairness: the insurer has "superior equities" when the third party was in a better position to avoid the loss and "in good conscience, ultimately ought to bear the loss." *Id.* at 1113, 1117 ("Where the third party is an indirect cause of the loss, because it contributed to or permitted the loss, the court must differentiate between primary and secondary causes of loss to determine whether the third party was in a better position to avoid the loss.")

Crum has a superior equitable position to Robb Report, which signed a loan agreement making it responsible for damage to the car and required it to return the car in the same condition.[10] *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 52 Cal. App. 4th 553, 555, 557–59 (1997). In *Fireman's Fund*, Wilshire leased camera equipment from Leonetti under a contract that required it to return the equipment or pay its value. Burglars stole the equipment from Wilshire's van. After Wilshire refused to pay Leonetti, Leonetti submitted a claim to its insurer, which paid the claim and sued Wilshire for breach of its contractual obligation to Leonetti. The court held that the insurer was entitled to equitable subrogation against Wilshire for breach of its contractual obligation, even though Wilshire did not cause the loss. *Id.* at 555, 557–59. *Fireman's Fund* controls here: Robb Report assumed responsibility for damage to the car.

The case against Emil Borokhovich, a passenger during the accident, is different. He signed a waiver that bound him to the terms of Robb Report's loan agreement with Ferrari.[11] The waiver is titled "Car of the Year Napa Valley 2018 Driver Waivers." On it, he listed his name, email, phone number, address, age, driver's license, and car insurance (including the policy number and the insurer's address and telephone number). He agreed to have his driver's license with him "at all

---

[10] Vehicle Loan Agreement, Ex. A to Richardson Decl. – ECF No. 68-1 at 11; Order – ECF No. 77 at 2.
[11] Order – ECF No. 77 at 3; E. Borokhovich Waiver, Ex. B to Barry Decl. – ECF No. 71-5 at 13–15.

times while driving."[12] Certainly he borrowed the car, but the plain language of the waiver is that drivers (not borrowers) assumed responsibility for damage to the car.

Moreover, even if he assumed responsibility for the loss, Crum is not entitled to equitable subrogation against him. The inquiry turns on the relative equities between the insurer and the party who contractually assumed responsibility for a loss that he did not cause. 2 H. Walter Croskey et al., Cal. Prac. Guide: Ins. Litig. ¶¶ 9.64–9.66 (2021) (collecting cases). For example, Wilshire assumed the risk of damage to the equipment and had to pay for it when it was stolen. *Fireman's Fund*, 52 Cal. App. 4th at 558–59. Similarly, a jeweler who assumed all risk for consigned jewelry was responsible when someone stole it. *Meyer Koulish Co. v. Cannon*, 213 Cal. App. 2d 419, 423–24 (1963). By contrast, an innocent third-party bank cashed checks forged by the insured's employee. Because the bank had no reason to doubt the genuineness of the forged checks, the insurer's equities were not superior to the bank's. *Meyers v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 11 Cal. 2d 92, 102–03 (1938).

Emil Borokhovich contends that this case is like *Meyers*. *Meyers* is distinguishable: it involves a crime by the insured's employee, which — in the language of tort — is not a risk that the bank reasonably could perceive. *Dillon v. Legg*, 68 Cal. 2d 728, 739 (1968) (quoting *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344 (1928)). Still, the relative equities do not — on this briefing — entitle Crum to equitable subrogation over a passenger who did not cause the loss, especially given a waiver that did not identify the risk to a passenger (as opposed to a driver).

A final word on equities and subrogation: the court understands that in cases like *Fireman's Fund* and *Cannon*, the theft of insured property meant that there was only one avenue of recovery: a subrogation act against the borrower of the equipment in *Fireman's Fund* and the jeweler in *Cannon*. This case is different because there is a third party directly responsible for the loss: Anatoly Borokhovich. Still, the parties identified no analogous cases where someone expressly assumed the risk of loss and nonetheless was not responsible. And here, Robb Report assumed that responsibility, permitted the loss, and in "good conscience, ultimately ought to bear" it. *State Farm*,

---

[12] E. Borokhovich Waiver, Ex. B to Barry Decl. – ECF No. 71-5 at 13–15.

143 Cal. App. 4th at 1113, 1117. The court grants Crum summary judgment against Robb Report and Anatoly Borokhovich.

## RULE 56(d) ISSUE

An issue with the briefing is that Crum's principal argument on equitable subrogation was in its reply brief. To put the case in an appropriate procedural posture, the court ordered supplemental briefing on the ordinary summary-judgment briefing schedule, thereby allowing the defendants to oppose Crum's argument and Crum to reply.[13]

At oral argument, the defendants suggested that they did not have a sufficient opportunity to address Crum's evidence and present facts to justify their opposition. Fed. R. Civ. P. 56(d). The court's intent with the supplemental-brief process was to avoid any fairness or Rule 56(d) issues. That said, if the defendants have objections to the process, they must confer with Crum and then raise any issues with the court. The court's preference is that the parties submit their positions in a joint statement, but if the parties prefer a briefing process, that is fine too.

## CONCLUSION

The court grants Crum summary judgment against Robb Report and Anatoly Borokhovich and denies Crum summary judgment (both for breach of contract and for equitable subrogation) against Emil Borokhovich. (On this last point, the court revisits the interlocutory conclusions about Emil Borokhovich in the earlier order.)

This order is interlocutory to the extent that the defendants may have Rule 56(d) concerns about the briefing process for addressing equitable subrogation.

**IT IS SO ORDERED.**

Dated: August 30, 2021

LAUREL BEELER
United States Magistrate Judge

---

[13] Order – ECF No. 77 at 8.